UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROGRESSIVE SOLUTIONS, INC., | Case No. 16-cv-04805-SK |
| Plaintiff, | |
| v. | **ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT RE DEFEND TRADE SECRETS ACT** |
| MICHAEL STANLEY, et al., | |
| Defendants. | Regarding Docket Nos. 66, 93 |

The Court reserved ruling on the motion for summary judgment filed by Defendants City of Oakland (the "City") and Michael Stanley ("Stanley") (collectively referred to as "Defendants") as to the causes of action under the Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1831 *et seq.* Upon receipt of the parties' submissions, the Court now **GRANTS** the motion for the reasons set forth below. The Court also **GRANTS** Defendants' request for judicial notice in support of their further briefing on jurisdiction. (Dkt. 93.)

## BACKGROUND

Plaintiff Progressive Solutions, Incorporated ("PSI") brought suit against the City and Stanley for misappropriation of trade secrets pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ("DTSA"). PSI also sued for breach of contract and other state-law causes of action, but in previous Orders the Court granted Defendants' motions for summary judgment as to all causes of action except those under the DTSA. (Dkts. 58, 86.) There is a fuller explanation of the factual background in those previous Orders, but a brief description of some of the facts relevant to the DTSA claims is set forth below.

In May of 2007, PSI and the City executed an agreement entitled Agreement for License of Software, Purchase of Equipment, Information Technology Services and for Maintenance and

Support Services ("Agreement") pursuant to a City Council resolution. (Dkt. 67-1 (Declaration of Ilse C. Scott ("Scott Decl.")), Ex. 1.)

On October 4, 2011, the City Council passed Resolution 83574, which authorized the City Administrator to extend the term of the Agreement with PSI for a period of three years not to exceed $100,000 per year, with two optional annual extensions. (Dkt. 73-26 (Declaration of Sheryl Traum ("Traum Decl.")), Ex. 26.) The City and PSI did not execute any written extensions of the Agreement.

On June 10, 2014, the Agenda Report to the City Council recommended that the City Council adopt another resolution regarding the Agreement with PSI. (Dkt. 73-15 (Traum Decl.), Ex. 15.) The Agenda Report included the recommendation that the City Council make certain findings and authorize the City Administrator to "enter into a First Amendment to the Agreement with [PSI]." (*Id*.) That Agenda Report, as well as another one, noted that there was no contractual authority for the City to pay PSI in excess of $617,000 and that the City's "staff discovered that payments in excess of Contracted and Spending Authority had occurred across several fiscal years regarding the contract between the City of Oakland and PSI." (Dkts. 73-15, 73-16.) On June 14, 2014, the City Council passed Resolution 85069, which authorized the "City Administrator to execute a First Amendment to the Agreement" with PSI for an extension of the Agreement, but PSI and the City never entered into a written First Amendment. (Dkt. 82-2 (Defendants' Supplemental Request for Judicial Notice).) The City paid PSI for services through 2013 but made no payment in 2014. (Dkt. 73-28 (Excerpts of Deposition of Margaret O'Brien) at 62:5-20.) On July 9, 2014, PSI notified the City that the Agreement had lapsed because of non-payment. (Dkt. 67-3.)

Stanley worked for PSI for just over four years, from March 12, 2008 to May 3, 2012, and then worked for the City for approximately three years until May of 2015. (Dkt 67-6 (Declaration of Michael Stanley), ¶¶ 3, 4.) PSI contends that Stanley misappropriated PSI's trade secrets obtained while he worked for PSI and that he disclosed PSI's trade secrets to the City.

**ANALYSIS**

**A.    Jurisdiction.**

In an Order dated March 13, 2018 (Dkt. 89), the Court asked the parties to address the Court's jurisdiction over this matter, given that the sole federal causes of action are based on a violation of the DTSA.  The DTSA provides federal courts with jurisdiction over claims involving the misappropriation of trade secrets used in interstate commerce.  18 U.S.C. § 1836(b)(1).  Section 1836(b)(1) provides that an owner of a trade secret may bring a claim under the DTSA for misappropriation "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  *Id*.

The parties agree that this Court has jurisdiction.  Defendants assert that PSI has established a sufficient nexus with interstate commerce to confer jurisdiction under the DTSA.  PSI's documents demonstrate that PSI's software and services - the specific software module, LicenseTrack, which contains the alleged trade secrets at issue here – are used in and intended for use in interstate commerce.  (Dkt. 92-1 (Declaration of Ilse C. Scott, Exs. 1- 4).)  PSI agrees that its software is used in interstate commerce and provides additional evidence demonstrating the link with interstate commerce.  (Dkts. 94-1 (Declaration of Glenn Vodhanel); 94-8 (Declaration of Patrick Kieffer); 94-9 (Declaration of Sheryl Traum); 94-12 (Declaration of Chris Retzinger).)  The Court finds that Defendants, as the parties who removed this action and bear the burden on jurisdiction, have demonstrated that federal jurisdiction exists here under the DTSA.

**B.    Applicable Legal Standard on Motion for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party."  *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those

United States District Court
Northern District of California

United States District Court
Northern District of California

portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. If the party moving for summary judgment does not have the ultimate burden of persuasion at trial, that party must produce evidence which either negates an essential element of the non-moving party's claims or that party must show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and, by its own evidence, set forth specific facts showing that there is a genuine issue for trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact must take care to adequately point a court to the evidence precluding summary judgment because a court is "not required to comb the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (citation omitted). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

## C.     Remaining Portion of Defendants' Motion for Summary Judgment.

PSI designs "relational" databases and related software for clients and provides support for its clients who use those databases and software. (Dkt. 72 (PSI's Opp.).) PSI provides these services for municipal entities for collecting taxes. (Dkt. 1-11 (Second Amended Complaint ("SAC")) at ¶ 2.) PSI licenses the software to its clients. (Dkt. 67 (Scott Decl., Ex. 1).) The City and PSI negotiated and executed an agreement for PSI to provide an automated local tax system to the City, as well as maintenance and support services for that system. (Dkt. 82-2 (RJN, Ex. 2).)

The DTSA defines "trade secret" to include "all forms and types" of information that derive value from being secret and that the owner took reasonable measures to keep secret. 18

U.S.C. § 1839(3).  "Misappropriation" consists of, in relevant part,[1] "disclosure or use of a trade secret [by a defendant] without express or implied consent" of the owner, where the defendant knew or had reason to know the trade secret had been acquired under circumstances giving rise to a duty to keep secret at the time of disclosure or use.  18 U.S.C. § 1839(5).  The DTSA became effective on May 11, 2016 and applies only to misappropriation that occurred after that date.  *See* Defend Trade Secrets Act of 2016, Pub. L. No. 114-153, 130 Stat. 376 (2016).

Therefore, to prove its claim under the DTSA, PSI must show the following:  (1) that PSI took reasonable measures to keep the contested information secret, (2) that the contested information derives independent value from being secret, (3) that Defendants used or disclosed the contested information without express or implied consent of PSI, and (4) that, at the time of the disclosure Defendants knew or had reason to know that the contested information had been acquired under circumstances requiring secrecy.

### 1.      PSI's DTSA Cause of Action Against Stanley.

Defendants argue that PSI cannot maintain its DTSA cause of action against Stanley because he did not engage in any relevant conduct after May 11, 2016, the DTSA's effective date. The parties agree that Stanley's employment with the City ended a year before the DTSA's effective date, in May 2015.  (Dkt. 67-4 (Scott Decl., Ex. 6 at ¶ 4).)  Defendants argue that Stanley did not engage in any relevant conduct after his retirement in May 2015.  PSI fails to address this point in its opposition brief.  Because PSI fails to submit any evidence to demonstrate that Stanley used or disclosed any trade secrets on or after May 11, 2016, the Court grants Defendants' motion as to PSI's seventh cause of action for violation of the DTSA by Stanley.

---

[1]  There are other methods of establishing misappropriation, but PSI claims misappropriation based on these particular theories.  (Dkt. 1-11 (SAC at ¶¶ 143-170).)  PSI originally alleged state-law causes of action for trade secret misappropriation, but the Court previously granted Defendants' motion for summary adjudication as to those causes of action. (Dkt. 58.)  PSI's failure to include those causes of action in its CGCA claim to the City precluded PSI's ability to prosecute those state-law causes of action in court.  But the bar under the CGCA only applies to state-law claims.  *Willis v. Reddin*, 418 F.2d 702, 704-05 (9th Cir. 1969). Therefore, PSI's failure to include misappropriation of trade secrets in its CGCA claim does not impact PSI's ability to prosecute its causes of action under the DTSA.

<div style="margin-left:auto">
</div>

United States District Court
Northern District of California

### 2.    PSI's DTSA Cause of Action Against the City.

PSI bases its claim for misappropriation of trade secrets against the City in its eighth cause of action on two areas of use or disclosure:  (1) information shared by Stanley with Frank Mosely, an employee of the City; and (2) information the City shared with HdL, PSI's competitor, when the City was moving its data to HdL to work with HdL.  PSI argues that Mosley, a City employee, used the trade secrets that he learned from Stanley before Stanley retired.  Before his employment ended, Stanley created a document of instructions or procedures (the "Procedures") and trained Mosely on how to use the Procedures with PSI's software.

With respect to PSI's cause of action under against the City, Defendants move for summary judgment on the following grounds: (1) PSI cannot make a claim under the DTSA to the extent it is premised on the Procedures, which Stanley created before the DTSA was enacted; (2) the Procedures do not contain trade secrets under the DTSA; and (3) the information the City disclosed to HdL, PSI's competitor, did not constitute trade secrets.

### i.    Continuing Use Doctrine.

PSI claims misappropriation of the trade secrets in the Procedures based on Mosely's use of the Procedures after May 11, 2016.  As a legal matter, if Mosely had knowledge of trade secrets that he acquired and used before May 11, 206, and continued to use the trade secrets after May 11, 2016, such continued use would violate the DTSA.  A use of trade secrets after May 11, 2016 constitutes a claim under the DTSA even if there was also use before May 11, 2016.  *See Avago Techs. United States Inc. v. NanoPrecision Prods*., 2017 U.S. Dist. LEXIS 13484 at \*26  (N.D. Cal. Jan. 31, 2017); *Veronica Foods Co. v. Ecklin*, 2017 U.S. Dist. LEXIS 101325 at \*43 (N. D. Cal. June 29, 2017); *Cave Consulting Grp., Inc. v. Truven Health Analytics, Inc*., 2017 U.S. Dist. LEXIS 62109, at \*9-10 (N.D. Cal. April 24, 2017).  Here, the issue is whether there is any evidence that Mosely actually used PSI's trade secrets after May 11, 2016.

### ii.    The Procedures Created by Stanley.

Initially, PSI appeared to argue that the Procedures disclosed how to make corrections to the City's data and that such instructions were trade secrets.  However, in their motion for

summary judgment, Defendants argued that merely describing the how PSI's software works is not protectable as a trade secret.  *See Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011) ("Plans, flows, inputs, outputs, rules of operation, priorities of operation, and the like are not trade secrets to the extent they are manifest in the way a program works. . . . While source code is undoubt[edly] a trade secret, the way the source code *works* when compiled and *run* is not.") (emphasis in original); *see a*lso *Silvaco Data Sys. V. Intel Corp.*, 184 Cal. App. 4th 210, 222 (2010) (disproved on other grounds by *Kwikset Corp. v. Super. Ct.,* 51 Cal. 4th 310 (2010)) (rejecting claim for misappropriation where defendant possessed and used software, but did not have or disclose the software source code).

In opposition to Defendants' motion, PSI appears to shift its argument.  PSI now contends that its trade secrets disclosed in the Procedures are the ways in which "multiple tables and columns work together."  In other words, the Procedures disclose the "joins" between different tables and how those tables work together to perform complex accounting calculations.  (Dkt. 72 (Opp.) at 8, 23.)  However, PSI's own witnesses testified that the Procedures do not disclose any information about the "joins" between tables.  (Dkt. 82-1 (Lee Decl., Ex. 4 (Steve Levan Deposition Excerpts) at 138:17-21, 139:16-19 and Lee Decl. Ex. 3 (PSI's expert witness Rajeev Surati's Deposition Excerpts) at 92:12–23, 133:23–134:10).)  PSI attempted to alter the substance of Mr. Levan's testimony through purported "errata sheets," but the Court sustained Defendants' evidentiary objections to them.  (Dkt. 86.)  PSI does not to cite to any other evidence in the record to rebut Defendants' argument that the Procedures do not disclose any information about "joins" between tables.  Thus, the City's use of the Procedures, even after May 11, 2016, does not constitute misappropriation of trade secrets under the DTSA.

### iii.    Stanley's Oral Training of Mosely.

PSI then argues that Stanley trained Mosley using PSI's trade secrets on how to edit the data and implies in its Opposition that Stanley imparted additional information orally to Mosely. However, PSI has not met its burden to point to evidence to show that Stanley imparted trade secrets to Mosely while training him.  Therefore, PSI fails to meet its burden to demonstrate, with evidence, that Stanley disclosed PSI's trade secrets to Mosely when he trained him such that

7

Mosley could, and did, use them after May 11, 2016.  In other words, since PSI cannot show that the Procedures themselves contain trade secrets, PSI must point to evidence that Stanley disclosed trade secrets to Mosely orally while training him.  Here, PSI fails to meet that burden.

<div align="center">

**a.    Declaration of Rajeev Surati and Exhibit 5 to Traum Declaration.**

</div>

The Declaration of Rajeev Surati, PSI's expert witness, openly asserts that Stanley disclosed trade secrets to Mosely while training him.  (Dkt. 74 (Surati at ¶ 19).)[2]  Surati opines that Stanley trained Mosley on how to make changes to the database by using PSI's trade secret information and that Mosley actually used such trade secret information to alter the City's data.  (Dkt. 74, ¶¶ 19, 21, 23.)  However, while Surati's opinions are admissible, his declaration cannot establish underlying facts.  *See Williams v. Illinois*, 567 U.S. 50, 69 (2012) ("Under . . . the Federal Rules of Evidence, an expert may base an opinion on facts that are made known to the expert . . ., but such reliance does not constitute admissible evidence of this underlying information.") (internal quotation marks omitted)  Therefore, if there is admissible evidence from another source that describes what Stanley told Mosley, Surati can opine as to whether such information constituted trade secrets.  But Surati cannot establish or demonstrate the underlying facts, *i.e.* what Stanley actually told Mosley.

Because there is no direct testimony from either Stanley or Mosely about Stanley's alleged disclosure of information about "joins" to Mosely, PSI submits Exhibit 5 to the Declaration of Sheryl Traum for that proposition.  (Dkt. 73-5.)  PSI claims that this document shows that Stanley disclosed trade secrets to Mosely.  (Dkt. 72 at 7.)  Surati discussed Exhibit 5.  (Dkt. 74, ¶ 23.)  Surati simply states:  "In my opinion, Mr. Stanley's work, and later, Frank Moseley's work, in making 'corrections' to financial data in the database (as illustrated in the 'xAudit table') demonstrates that Defendants were able to use PSI trade secret information to allow Oakland to avoid he cost of paying PSI's software support contract cost."  (Dkt. 74, ¶23.)  However, Surati provides no explanation of how Exhibit 5 proves that point.  Although PSI cites to the Mosely

---

[2]  The Court previously addressed Defendants' objection to admissibility of the unsworn report by Surati and sustained Defendants' objection to the unsworn report.  (Dkt. 73-25; Dkt. 86.)

deposition to try to explain what Exhibit 5 is, the cited excerpts from the Mosely deposition do not even address Exhibit 5.  (Dkt. 73-17 at 118, 120, 126-129, 135-137, 140-141.)  PSI argues that the document demonstrates that Mosley made changes to the City's information in the database, but this is not self-evident from the document itself and is not evident from the Mosely deposition testimony.

Mosely was asked about and answered questions about the following: (1) that he used a password to log in to the database, (2) that he made changes to the database when he fixed a problem in charging the wrong account, (3) that he used a "SQL statement procedure" to move a payment, (4) that before Stanley trained him, Mosely asked PSI for help in moving a payment because the City did not know how to do that, (5) that Mosely learned how to correct an invoice versus correcting a balance, (6) that Stanley showed Mosely how to correct an application of a payment, and (7) that, before the training, the City asked PSI to correct the application of a payment.  (Dkt. 73-17 at 118, 120, 126-129, 135-137, 140-141.)  PSI does not explains how such testimony shows that Stanley disclosed a trade secret to Mosely.  PSI simply does not link the alleged trade secrets to the fact that Stanley trained Mosely how to make changes to the database to correct errors.

Therefore, the Court finds that PSI fails to demonstrate that Mosley used any of PSI's trade secrets.  In the absence of any evidence that a City employee used PSI's trade secrets to edit the City's data, PSI's cannot create a question of fact for its DTSA cause of action to the extent it is premised on the Procedures or Stanley's training of Mosley.

### b.    PSI's Argument by Inference.

PSI then attempts to show that Stanley imparted trade secrets about the "joins" to Mosely by arguing that the only way a person could edit the City's own information in the database required knowledge and use of PSI's trade secrets.  (Dkt. 72 at 7.)  Although PSI's Opposition cites the deposition of Patrick Kieffer only to show PSI's attempts to keep information confidential (Dkt. 66 at 22), PSI claimed at hearing that excerpts from the Kieffer Deposition show that the only way that Mosely could have made the edits to the City's data in the database was by using PSI's trade secrets.  However, the Court struck that evidence due to PSI's failure to

United States District Court
Northern District of California

timely serve its sealed exhibits.  (Dkt. 86.)  Because PSI cannot show, by *admissible* evidence, that Stanley disclosed to Mosely information about the "joins" or that Mosely used any such information about the "joins," PSI cannot maintain its claim under the DTSA for the City's alleged use of information about the "joins."

### iv.   Information Provided to DhL.

PSI's second theory is that the City disclosed PSI's trade secrets to DhL, another company, without PSI's consent and that the City knew that it had obtained the trade secrets under circumstances giving rise to a duty not to disclose.  There are three areas of information at issue: (1) a "database copy," (2) SQL table and column names, and (3) screenshots of the software interface, i.e., the computer screen that a user sees when using the software.

### a.   "Database copy."

PSI claims that the City, in moving from PSI's system and software to HdL, sent a "database copy" to HdL that contained PSI's trade secrets.  There is no dispute that the City sent some type of data to HdL.  However, PSI fails to meet its burden to show that the "database copy" contained trade secrets because PSI has never reviewed and did not provide evidence of what the City sent to HdL.  At the hearing on this motion, PSI conceded that PSI did not obtain the "database copy" or view the "database copy" that the City sent to HdL.

PSI contends that it does not "need a copy of the 'copy' of its database that the City provided to a competitor to know what information is contained in that database or to know that a 'copy' is just what it means – a replica."  (Dkt. 72 at 18.)  However, without the actual evidence, PSI cannot meet its burden of proof to show that the City disclosed PSI's trade secrets to HdL in the "database copy."  For example, the City argues that raw data alone does not constitute a trade secret.  If the City sent to HdL raw data from a database with nothing else, there would be no disclosure of a trade secret.

Surati, PSI's expert, states that, even without the "database copy," it is clear from electronic mail messages between the City and HdL's employees that the City sent confidential information to HdL.  (Dkt. 74, ¶ 35.)  Specifically, Surati cites to Exhibits 7, 8, 9, 10, 11, and 20 to the Traum Declaration (Dkts. 73-7, 73-8, 73-9, 73-10, 73-11, 73-20).  (Dkt. 74, ¶ 35.)  It is clear

United States District Court
Northern District of California

that the City sent HdL something or gave access to something, but it is not clear exactly what the City provided. These email messages themselves do not prove specifically what the City sent to HdL.

At the hearing, PSI argued that it had asked for, but not received, a copy of the database copy sent to HdL both from HdL and the City. PSI had the ability to seek a motion to compel and did not do so against either the City or HdL. Furthermore, PSI could have taken a deposition of the City pursuant to Fed.R.Civ.P. 30(b)(6) or taken a deposition of the City's employee or employees who sent messages to HdL. PSI did not submit any such testimony here.

Here, the City pointed out that PSI lacks evidence on this key issue. PSI, and not the City, bears the ultimate burden of showing that the City disclosed PSI's trade secrets to HdL. Therefore, PSI must provide some evidence to show that the City actually disclosed PSI's trade secrets to HdL in order to survive summary judgment  PSI fails to do so. Therefore, PSI fails to show that the City disclosed any trade secrets to HdL by providing it with a database copy.

### b.      SQL Language – Table and Column Names.

PSI claims that SQL "table and column names" are trade secrets and that the City disclosed that information to HdL. The database at issue has tables and columns, and each has its own name. The City argues that the SQL table and column names are not trade secrets and bases its position on PSI's own witness, Levan, who admitted that the table names and columns are not trade secrets. (Dkt. 67-11.) In response, PSI attempts to rely upon the purported "errata sheets" to Levan's deposition. However, as noted above, the Court previously sustained Defendant's evidentiary objections to PSI's attempted corrections to Levan's testimony and will not consider them. (Dkt. 86.)

Defendants also argue that the table and column names were not confidential because PSI disclosed them to the City in writing without designating them as "confidential." Defendants point out that the Agreement requires that, if PSI discloses "Confidential Information" in writing to the City, PSI must identify that information clearly as "Confidential Information" at the time of disclosure. (Dkt. 67-1 at § 22(a).) PSI argues that there is another section of the Agreement that provides that "any information relating to" PSI's "licensed software (including method of

operations), screen documentation or database design" is "Confidential Information" protected from unauthorized disclosure under this section and to be kept in confidence . . . in perpetuity." (Dkt. 67-1, § 22(f).)  PSI argued at oral argument that this broad section in section 22(f) is greater than the narrow definition in section 22(a) and trumps section 22(a).  PSI argued that section 22(a) only addresses disclosure of non-technical information, but did not cite to any provision in the Agreement, or to any other evidence, in support of that proposition.

The Court rejects PSI's interpretation of the Agreement because PSI's interpretation renders the language of section 22(a) superfluous.  General rules of contractual interpretation reject interpretations that render language superfluous.  *See, e.g., Travelers Cas. & Surety Co. v. Superior Court*, 63 Cal.App.4th 1440, 1455 (1998) (rejecting interpretation that rendered a word as "surplusage").  Here, if PSI's interpretation is correct, then there is no need for Section 22(a).  The Agreement's own language does not support PSI's argument that section 22(a) applies only to disclosure of non-technical information.  In addition, PSI's interpretation ignores the Agreement's definition of "Confidential Information" as information "which is not generally known to the public[.]"  (Dkt. 67-1, §22(d).)  In other words, the Agreement defines "Confidential Information" broadly in section 22(f) but also narrows the definition in section 22(d) and provides a mechanism for informing the City of the confidentiality of such information in section 22(a).  These provisions, read together, are in harmony and satisfy the statutory rule of construction that "the whole of a contract is to be taken together, so as to give effect to every part[.]"  Cal. Civ. Code § 1641.

Thus, the Court finds that, for PSI to maintain the "trade secret" nature of information conveyed in writing to the City, PSI was required to designate the information as such.  There is no dispute that PSI disclosed information about table and column names to the City in writing and did not designate that information as "Confidential Information."  (Dkts. 67-12–67-16.) Therefore, PSI fails to meet its burden to show that the information is a trade secret.

### c.    Screen Shots.

PSI contends screen shots constitute "trade secrets" and that PSI disclosed screen shots to

HdL.  There is no dispute that the City disclosed some of PSI's screen shots to HdL, but the dispute again is whether the screen shots constitute trade secrets.  The City contends that PSI regularly showed screen shots to attendees at industry events.  (Dkt. 67-11 at 35:11-25.)  The City also contends that PSI "normally" attaches screen shots of its software in response to Requests for Proposals ("RFPs.")  (Dkt. 67-17 at 352:8–353:10.)  PSI failed to address this argument in its opposition.  At the hearing, PSI argued that the responses to RFPs were confidential, but PSI did not submit any evidence to support this argument.  Moreover, PSI does not point to any evidence showing that PSI used reasonable methods to keep its trade secrets confidential.  (Dkt. 72 at 22.)[3] Given that PSI cannot meet its burden to show that the screen shots are trade secrets, PSI cannot prevail on this claim.

<div align="center">* * *</div>

Accordingly, the Court finds that PSI fails to demonstrate the existence of a genuine dispute of a material fact that would preclude summary judgment on either of its causes of action under the DTSA.  Therefore, the Court GRANTS Defendants' motion for summary judgment on PSI's two remaining causes of action under the DTSA.

<div align="center">**CONCLUSION**</div>

For all of the reasons listed above, the Court GRANTS Defendants' motion for summary judgment with respect to PSI's the Seventh and Eighth Causes of Action.  Separate judgment shall issue.

**IT IS SO ORDERED**.

Dated: April 24, 2018

_____
SALLIE KIM
United States Magistrate Judge

---

[3] PSI cites, without reference to any page numbers or paragraphs, three sources to show that it generally protected trade secrets:  (1) the Kieffer Deposition, (2) the Surati Declaration, and (3) the Moerbeek Declaration.  (Dkt. 72 at 22.)  The Court previously struck from evidence the Kieffer Deposition transcript (Dkt. 73-19) and the Moerbeek Decl. (Dkt. 75).  (Dkts. 81, 86).  The Surati Declaration cannot serve as admissible evidence to prove a fact – an attempt by PSI to keep information confidential.

United States District Court
Northern District of California

United States District Court
Northern District of California