NOSSAMAN LLP
DAVID C. LEE (SBN 193743)
dlee@nossaman.com
ILSE C. SCOTT (SBN 233433)
iscott@nossaman.com
50 California Street, 34th Floor
San Francisco, CA 94111
Telephone: 415.398.3600
Facsimile: 415.398.2438

BARBARA J. PARKER, City Attorney (SBN 069722)
OTIS McGEE, Jr., Chief Assistant City Attorney (SBN 71885)
COLIN T. BOWEN, Supervising Attorney (SBN 152489)
MICHELLE M. MEYERS, Senior Deputy City Attorney (SBN 236387)
mmeyers@oaklandcityattorney.org
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: 510-238-2964
Facsimile: 510-238-6500

Attorneys for Defendants CITY OF OAKLAND
and MICHAEL STANLEY

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA
### (SAN FRANCISCO)

| | |
|---|---|
| PROGRESSIVE SOLUTIONS, INC., | Case No:    3:16-cv-04805-SK |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| MICHAEL STANLEY, CITY OF OAKLAND, and DOES 1 – 100, INCLUSIVE, | Hearing Date:    June 18, 2018<br>Time:    9:30 a.m.<br>Dept.:    Courtroom A |
| Defendants. | Complaint Filed:    January 23, 2015 |

56409511.V6

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................................2

        A.  The Dispute Arises........................................................................................................2

        B.  PSI Files Suit in State Court .......................................................................................2

        C.  Defendants Remove to Federal Court, and Obtain Judgment In Their
            Favor .............................................................................................................................3

III.    LEGAL ARGUMENT .........................................................................................................5

        A.  Legal Standard ............................................................................................................5

        B.  Defendants Are the "Prevailing Parties" Entitled to Fees and Costs Under
            California Code of Civil Procedure § 1032 ...............................................................5

            1.  Breach of Contract Claims (First and Third Causes of Action)..............................5

            2.  Tort Claims Involving the Contracts (Second, Fourth, Fifth, Sixth,
                Seventh, Eighth, Ninth, Tenth, and Eleventh Causes of Action)...........................7

            3.  Plaintiffs Cannot Evade Contractual Attorney's Fees by Claiming, in
                Hindsight, That Its Own Alleged Contracts Are Unenforceable .........................10

        C.  Fees Are Also Warranted for Defeating PSI's Trade Secret Claims (Fifth,
            Sixth, Seventh, and Eighth Causes of Action)............................................................12

        D.  Defendants Are Independently Entitled to Fees and Costs Under the
            California Government Claims Act ("CGCA").........................................................18

        E.  The Hours Spent by Defendants' Counsel Were Reasonably Expended ....................22

IV.     CONCLUSION...................................................................................................................25

NOTICE OF MOTION & MOTION FOR ATTORNEY'S FEES AND COSTS; M.P.A
56409511.V6

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdallah v. United Sav. Bank*,
43 Cal. App. 4th 1101 (1996) ...............................................................................................8

*Acosta v. GT Drywall*,
No. EDMC170006JGBKKX, 2018 WL 1041412 (C.D. Cal. Jan. 22, 2018) ........................22

*Armstrong v. Brown*,
805 F. Supp. 2d 918 (N.D. Cal. 2011) .................................................................................25

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008) ..........................................................................................23, 24

*Cano v. Glover*,
143 Cal. App. 4th 326 (2006) .............................................................................................11

*Care Constr., Inc. v. Century Convalescent Centers, Inc.*,
54 Cal. App. 3d 701 (1976) ................................................................................................11

*Cataphora Inc. v. Parker*,
No. C09-5749 BZ, 2012 WL 174817 (N.D. Cal. Jan. 20, 2012) ..............................................6

*City of Santa Rosa v. Patel*,
191 Cal. App. 4th 65 (2010) ...............................................................................................22

*Crowe v. Wiltel Commc'ns Sys.*,
103 F.3d 897 (9th Cir. 1996) ................................................................................................5

*Cypress Semiconductor Corp. v. Maxim Integrated Prod., Inc.*,
236 Cal. App. 4th 243 (2015) ..................................................................................13, 14, 15

*Dell Merk, Inc. v. Franzia*,
132 Cal. App. 4th 443 (2005) ...............................................................................................7

*Direct Techs., LLC v. Elec. Arts, Inc.*,
836 F.3d 1059 (9th Cir. 2016) .............................................................................................13

*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*,
211 Cal. App. 4th 230 (2012) ...............................................................................................7

*Erickson v. R.E.M. Concepts, Inc.*,
126 Cal. App. 4th 1073 (2005) .............................................................................................8

*Faigman v. AT & T Mobility LLC*,
No. C-06-04622-MHP, 2011 WL 672648 (N.D. Cal. Feb. 16, 2011) ...................................25

ii

*Gabriel Techs. Corp. v. Qualcomm Inc.*,
  560 F. App'x 966 (Fed. Cir. 2014) .................................................................................16, 17

*Garedakis v. Brentwood Union Sch. Dist.*,
  No. 14-CV-4799-PJH, 2017 WL 725564 (N.D. Cal. Feb. 24, 2017) ...............................20, 21

*Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*,
  95 Cal. App. 4th 1249 (2002) ...........................................................................................14

*Gutierrez v. Wells Fargo Bank, N.A.*,
  2015 WL 2438274 (N.D. Cal. May 21, 2015) .......................................................................24

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983).........................................................................................................23

*Hsu v. Abbara*,
  9 Cal. 4th 863 (1995) .......................................................................................................10

*Intel Corp. v. Terabyte Int'l, Inc.*,
  6 F.3d 614 (9th Cir. 1993) ................................................................................................23

*International Billing Services, Inc. v. Emigh*,
  84 Cal. App. 4th 1175 (2000) ......................................................................................10, 11

*Jones v. Drain*,
  149 Cal. App. 3d 484 (1983) .............................................................................................11

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ..............................................................................................23

*Kobzoff v. Los Angeles Cty. Harbor/UCLA Med. Ctr.*,
  19 Cal. 4th 851 (1998) .....................................................................................................19

*Linear Tech. Corp. v. Tokyo Electron, Ltd.*,
  200 Cal. App. 4th 1527 (2011) ..........................................................................................12

*Laabs v. City of Victorville*,
  163 Cal. App. 4th 1242 (2008) ..........................................................................................19

*In re Linkedin User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015).......................................................................................24

*LPP Mortg., Ltd. v. Bizar*,
  No. B184907, 2006 WL 1991411 (Cal. Ct. App. July 18, 2006) .............................................6

*Mangold v. California Pub. Utilities Comm'n*,
  67 F.3d 1470 (9th Cir. 1995) ..............................................................................................5

*In re Murray*,
  No. 11-10535, 2013 WL 4100804 (Bankr. N.D. Cal. Aug. 9, 2013) .....................................12

iii

*Newport Yacht Club v. City of Bellevue*,
No. C09-0589RSL, 2010 WL 11527282 (W.D. Wash. July 19, 2010) ...................................22

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*,
730 F.3d 1111 (9th Cir. 2013) ..........................................................................................19

*PLCM Group v. Drexler*,
22 Cal. 4th 1084 (2000) ....................................................................................................22

*Reynolds Metals Co. v. Alperson*,
25 Cal. 3d 124 (1979) .................................................................................................8, 10

*Santisas v. Goodin*,
17 Cal. 4th 599 (1998) .......................................................................................................10

*Schwarz v. Sec'y of Health & Human Servs.*,
73 F.3d 895 (9th Cir. 1995) ...............................................................................................22

*Silver v. Boatwright Home Inspection, Inc.*,
97 Cal. App. 4th 443 (2002) ................................................................................................5

*Stonebrae L.P. v. Toll Bros.*,
521 F. App'x 592 (9th Cir. 2013) ..................................................................................22, 25

*Suzuki v. Hitachi Glob. Storage Techs., Inc.*,
No. C 06-7289 MHP, 2010 WL 956896 (N.D. Cal. Mar. 12, 2010) .....................................25

*Syers Properties III, Inc. v. Rankin*,
226 Cal. App. 4th 691 (2014) .............................................................................................23

*Trustees of Cent. States, Se. & Sw. Areas Pension Fund v. Golden Nugget, Inc.*,
697 F. Supp. 1538 (C.D. Cal. 1988) ....................................................................................23

*United States v. State Farm Mut. Auto. Ins. Co.*,
245 F. Supp. 58 (D. Oregon 1965)........................................................................................22

*Van Skike v. Dir., Office of Workers' Comp. Programs*,
557 F.3d 1041 (9th Cir. 2009) .............................................................................................24

*Wren v. RGIS Inventory Specialists*,
No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) .....................................25

**Statutes**

18 U.S.C. § 1836 *et seq.*..................................................................................................5, 12

18 U.S.C. § 1836(b)(3)(D)................................................................................................1, 13

Cal. Civ. Code § 1717.............................................................................5, 6, 7, 8, 10

Cal. Civ. Code § 3426 *et seq.*..............................................................................................12

Cal. Civ. Code § 3426.4 ................................................................................................................1, 13

Cal. Code Civ. Proc. § 1032 .........................................................................................................1, 5

Cal. Code Civ. Proc. § 1033.5 ......................................................................................................1, 5

Cal. Code Civ. Proc. § 1038 ...........................................................................................1, 18, 19, 21

Cal. Code Civ. Proc. § 2019.210 ....................................................................................................16

**Other Authorities**

Fed. R. Civ. P. 54(d) ........................................................................................................................1

S. Rep. No. 114-220 (Mar. 7, 2016) ..............................................................................................13

NOTICE OF MOTION & MOTION FOR ATTORNEY'S FEES AND COSTS; M.P.A

56409511.V6

<u>**NOTICE OF MOTIONAND MOTION**</u>

PLEASE TAKE NOTICE that on June 18, 2018 at 9:30 a.m. or as soon thereafter as counsel may be heard by the Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom A, Defendants Michael Stanley ("Stanley") and the City of Oakland ("City") will move the Court pursuant to Fed. R. Civ. P. 54(d) and the Judgment entered on April 25, 2018 (Dkt. No. 100) for an award of <u>$992,890.71</u> in total attorney's fees and costs[1] against Plaintiff Progressive Solutions, Inc. ("PSI"), on the grounds that as the prevailing parties Defendants are entitled to recover fees and costs under state and federal statutes, including Cal. Code Civ. Proc. §§ 1032, 1033.5, and 1038, as well as Cal. Civ. Code § 3426.4 and 18 U.S.C. § 1836(b)(3)(D), as set forth in detail herein.  The motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Declaration of Ilse C. Scott ("Scott Decl."), the Declaration of Michelle Meyers ("Meyers Decl."), and upon such other matters as may be presented to the Court at the time of the hearing.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Defendants hereby seek an award of their attorney's fees and costs incurred in the defense of this action, as authorized by statute and contract.  As set forth below, these costs of defense were reasonably incurred because PSI engaged in scorched-earth litigation tactics, and expanded this case from a simple claim of breach of contract against the City into eleven causes of action alleged against two Defendants, with dozens of PSI "trade secrets" allegedly at issue. The case necessitated extensive fact and expert discovery, including the depositions of sixteen (16) fact witnesses, and five (5) expert witnesses.  Defendants also were required to review and analyze approximately 93,000 pages of documents produced by PSI.  This case further required an unusual amount of detailed motion practice, including opposing PSI's motion for a temporary restraining order and preliminary injunction, and briefing of Defendants' three dispositive

---

[1] Certain of Defendants' costs are sought via this motion rather than the concurrently-filed Bill of Costs, because they do not fall within the costs specified in F.R.C.P. 54 but are nonetheless recoverable under other statutory authorities discussed herein.  To avoid duplication, all costs included within the Bill of Costs have been *excluded* from the costs requested herein.

1

motions (one filed in state court prior to removal, and two subsequent motions filed and heard before this Court) – all of which were successful in eliminating one or more of PSI's claims.

This hard-fought litigation took over three years to resolve, and Defendants should be granted their full attorney's fees for the result they obtained.  There can be no legitimate dispute that Defendants are entitled to recover attorney's fees under the pertinent state and federal statutes – indeed, PSI itself has repeatedly asserted that fees are authorized for those claims.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Dispute Arises

This case arose from a contractual relationship between the City and PSI that came to an end, and PSI's dissatisfaction with that outcome.  In May of 2007, pursuant to a City Resolution authorizing a three-year contract term, the City and PSI executed an agreement entitled Agreement for License of Software, Purchase of Equipment, Information Technology Services and for Maintenance and Support Services (the "Software Contract") (Scott Decl., Ex. B at 1:27-2:5.)  The City and PSI discussed extending the term of the Software Contract between 2011 and summer 2014; however, no amendment to the original Software Contract was ever executed by the City Administrator.  (Scott Decl., Ex. B at 2:9-3:9.)

The dispute arose in 2014, when the parties were unable to agree on the terms of a proposed amendment and extension of the Software Contract.  Thus, the City made no payment to PSI in 2014.  (Scott Decl., Ex. B at 3:16-17.)  PSI argued that the Software Contract renewed automatically and thus was still valid and enforceable in 2014.  (*Id.* at 16:1-7.)  Throughout the litigation, the City consistently took the position that the Software Contract had expired and was never validly renewed, and thus did not require payment to PSI in 2014.  (*Id.* at 16:7-13.)

### B.     PSI Files Suit in State Court

As a result of this central disagreement, PSI filed a lawsuit against Defendants – but in its legal claims, PSI greatly expanded the scope of its allegations.  PSI's initial Complaint was filed in state court on January 23, 2015, and alleged state-law claims against Defendants for breach of contract, misappropriation of trade secrets, and unfair competition and unlawful business

practices.  (Scott Decl., Ex. H.)  In its prayer for relief, PSI requested that it "be awarded all attorneys' fees and costs associated with this matter."  (*Id.* at p. 31.)

The parties litigated in state court for approximately a year and a half.  Among other notable activity in the state court portion of this action (*see* Meyers Decl., ¶5 & Ex. B):

1.  On January 23, 2015, PSI filed its original Complaint.

2.  On April 28, 2015, the state court granted Defendants' Motion to Strike portions of PSI's complaint, and sustained Defendants' Demurrer with leave to amend.

3.  On June 4, 2015, PSI filed its First Amended Complaint.

4.  On June 30, 2015, Defendants answered PSI's First Amended Complaint.

5.  On July 13, 2015, the state court denied PSI's Ex Parte Application for a Temporary Restraining Order.

6.  On January 4, 2016, the state court issued a Civil Trial Re-Setting Order.

7.  On June 3, 2016, Defendants filed a Motion for Summary Judgment.

8.  On August 1, 2016, in lieu of opposing Defendants' pending summary judgment motion, PSI instead filed a Motion for Leave to file a Second Amended Complaint, stating that it wished to add additional claims of trade secret misappropriation under the newly-enacted federal Defend Trade Secrets Act of 2016 ("DTSA").

9.  On August 17, 2016, the state court granted PSI request to file a Second Amended Complaint and ordered PSI to pay the Defendants $5,000 to compensate them for having prepared and filed a Motion for Summary Judgment.

10. On August 18, 2016, PSI filed its Second Amended Complaint, dropping its unfair competition claim, and adding seven additional causes of action, including the DTSA claims.

11. On August 19, 2016, Defendants filed a Petition for Removal to Federal Court.

C.    **Defendants Remove to Federal Court, and Obtain Judgment In Their Favor**

The parties continued to actively litigate the case following its removal to federal court.  Among other notable activity before this Court:

3

1. On February 1, 2017, the parties participated in an Early Neutral Evaluation conference.

2. On April 11, 2017, the parties participated in a settlement conference before Magistrate Judge Laporte.

3. On September 13, 2017, the Court granted in part Defendants' discovery request, and ordered PSI to provide amended responses to Defendants' Requests for Production.

4. On October 30, 2017, the Court held a telephonic hearing regarding Defendants' discovery request that PSI disable the block it had placed on the PSI software, so that Defendants' expert could have access to the evidence.

5. On December 12, 2017, the Court granted Defendants' Motion for Partial Summary Judgment, eliminating PSI's first, second, fourth, fifth, sixth, ninth, tenth and eleventh causes of action, as well as PSI's request for punitive damages.

6. On March 8 and April 24, 2018, the Court granted Defendants' Motion for Summary Judgment, eliminating PSI's third, seventh and eighth causes of action.

(*See* Court docket; Meyers Decl., ¶6; Scott Decl., Exs. A-C.)

Fact discovery in this case was unusually heavy, due to PSI's wide-ranging allegations. PSI produced approximately 93,000 pages in document discovery, all of which had to be reviewed and analyzed by Defendants' counsel for purposes of preparing for depositions, dispositive motions, and the defenses to be asserted at trial. (Scott Decl., ¶22(a).)

Additionally, the parties conducted a total of sixteen fact witness depositions. Defendants were efficient, and deposed only six PSI witnesses. PSI, on the other hand, took a total of ten fact depositions: eight depositions of Defendants' witnesses, and two third-party witnesses deposed pursuant to subpoena. (Scott Decl., ¶22(b)-(c).)

The parties also conducted five expert depositions: two experts retained by Defendants, and three experts retained by Plaintiff. (Scott Decl., ¶22(d)-(e).)

As a result of the substantial defense work in this case, Defendants seek a total of $992,890.71 in recoverable legal fees and costs.

NOTICE OF MOTION & MOTION FOR ATTORNEY'S FEES AND COSTS; M.P.A

56409511.V6

## III.    LEGAL ARGUMENT

### A.    Legal Standard

This Court has federal question jurisdiction based on PSI's federal claims under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.*, governed by federal law.  The Court also has supplemental jurisdiction over the state law claims, and the state claims are governed by California law.  *See, e.g., Crowe v. Wiltel Commc'ns Sys.*, 103 F.3d 897, 899 (9th Cir. 1996).  Thus, as to the state-law claims, California law applies "in determining not only the right to fees, but also in the method of calculating the fees."  *Mangold v. California Pub. Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).  The reasonableness of Defendants' fee calculation is addressed below, and in the accompanying Declarations of Ilse C. Scott and Michelle M. Meyers.

### B.    Defendants Are the "Prevailing Parties" Entitled to Fees and Costs Under California Code of Civil Procedure § 1032

California Code of Civil Procedure section 1032(b) provides that a prevailing party in a civil action is entitled to recover costs.  Cal. Code Civ. Proc. § 1032(b).  "Costs" also includes attorney's fees, where they are provided by contract.  Cal. Code Civ. Proc. § 1033.5(a)(10); *Silver v. Boatwright Home Inspection, Inc.*, 97 Cal. App. 4th 443, 450 (2002).

Here, Defendants were the prevailing parties on all the contractual claims, as summary judgment was granted on the City's alleged breaches of the Software Contract (Scott Decl., Ex. B at 13:8-18:4), as well as Stanley's alleged breaches of his Employment Agreement (Scott Decl., Ex. A at 15:2-16:22).  Accordingly, Defendants are entitled to recovery of their attorneys' fees as part of their costs, pursuant to the terms of the contracts PSI sued upon.

#### 1.    Breach of Contract Claims (First and Third Causes of Action)

Defendants are entitled to recover their attorneys' fees as a matter of contract, because they are the prevailing party on all claims involving contracts, and the contracts contain attorney's fees provisions.  California Civil Code Section 1717(a) provides, in pertinent part:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in

5

the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Here, PSI's First Cause of Action for breach of contract asserted that Stanley breached his Employment Agreement. The Employment Agreement provides: "In the event any action is subsequently brought by one party against the other party to enforce this Agreement or to pursue any matter or issue which is deemed to be within the scope of this Agreement, the losing party shall be responsible to the prevailing party for ***all actual costs and actual attorney fees incurred*** as a result of the taking of such action in contravention to the terms of this Agreement." (Scott Decl., Ex. J, at P 39227, § XX(b) (emphasis supplied).)

PSI's Third Cause of Action for breach of contract alleged that the City breached the Software Contract. That agreement provides: "If either party commences an action or proceeding to determine or enforce its rights hereunder, the prevailing party shall be entitled to recover from the losing party ***all expenses reasonably incurred, including court costs, reasonable attorneys' fees and costs of suit*** as determined by the court." (Scott Decl., Ex. I, at P 39105, § 43 (emphasis supplied).)

Pursuant to the Court's summary judgment orders, Defendants are the prevailing parties entitled to recover their attorney's fees and costs under Section 1717. Further, given the breadth of these contractual provisions – which provide for attorney's fees plus "***all*** actual costs," "***all*** expenses," "court costs," "and costs of suit," Defendants may recover ***all*** costs incurred in defense of this case, including expert costs. *See, e.g., Cataphora Inc. v. Parker*, No. C09-5749 BZ, 2012 WL 174817, at *2 (N.D. Cal. Jan. 20, 2012) (awarding expert costs and other expenses under California law, pursuant to contract); *LPP Mortg., Ltd. v. Bizar*, No. B184907, 2006 WL 1991411, at *3 (Cal. Ct. App. July 18, 2006) (upholding award of expert costs and other out-of-pocket expenses under contract allowing recovery of "all expenses"); *Arntz Contracting Co. v. St. Paul Fire & Marine Ins*. Co., 47 Cal. App. 4th 464, 492 (1996) (recognizing there is no "legislative intent to prevent sophisticated parties from freely choosing a broader standard authorizing recovery of reasonable litigation charges and expenses").

NOTICE OF MOTION & MOTION FOR ATTORNEY'S FEES AND COSTS; M.P.A
56409511.V6

**2.** **Tort Claims Involving the Contracts (Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Causes of Action)**

**a.** **PSI's Tort Claims Are Claims "On a Contract"**

PSI also alleged multiple tort claims that arise from and are inextricably intertwined with the contracts at issue. The Second Cause of Action alleged that Stanley breached the implied covenant of good faith and fair dealing in his Employment Agreement. (SAC, ¶¶92-97.) The Fourth Cause of Action claimed that the City breached the implied covenant of good faith and fair dealing in the Software Contract. (SAC, ¶¶104-112.) The Fifth, Sixth, Seventh, and Eighth Causes of Action alleged misappropriation of trade secrets in violation of both contracts. (SAC, ¶¶116-18, 134-35, 147-48, 163-64.) The Ninth Cause of Action asserted that Stanley intentionally interfered with the Software Contract, causing the City to breach it. (SAC, ¶¶171-77.) Finally, the Tenth and Eleventh Causes of Action (SAC, ¶¶178-90) asserted that Stanley intentionally and negligently interfered with PSI's economic relationship with the City by "undercutting PSI's contracts" (¶184), and that PSI was damaged by its "loss of contractual revenues" (¶¶183 & 190). Thus, *all* of PSI's tort claims directly involve the contracts at issue, and Defendants are entitled to recover their fees incurred in defending these claims.

California law liberally construes California Civil Code Section 1717(a)'s application to actions "on a contract." *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*, 211 Cal. App. 4th 230, 240 (2012). "The phrase 'action on a contract' includes not only a traditional action for damages for breach of a contract containing an attorney fees clause …, but also any other action that 'involves' a contract under which one of the parties would be entitled to recover attorney fees if it prevails in the action…." *Id.* (citations omitted). Put another way, "[a]n action (or cause of action) is 'on a contract' for purposes of section 1717 if (1) the action (or cause of action) 'involves' an agreement, in the sense that the action (or cause of action) arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement; and (2) the agreement contains an attorney fees clause." *Douglas E. Barnhart, Inc.*, 211 Cal. App. 4th at 242. "As long as the action 'involve[s]' a contract it is 'on [the] contract' within the meaning of Section 1717." *Dell*

7

*Merk, Inc. v. Franzia*, 132 Cal. App. 4th 443, 455 (2005) (citing *Care Constr., Inc. v. Century Convalescent Centers, Inc.*, 54 Cal. App. 3d 701, 706 (1976) and *Leaf v. Phil Rauch, Inc.*, 47 Cal. App. 3d 371, 378–379 (1975)).  Here, PSI's tort claims all explicitly involved the two contracts at issue and they are therefore "actions on a contract" under Section 1717.

### b.      PSI's Tort Claims Are Intertwined With Its Contract Claims

Finally, even if PSI's related tort claims were not "on a contract" (which they are), Defendants would still be entitled to their attorney's fees incurred in defending those claims, because they were inextricably intertwined with PSI's contract claims.  The Court need not attempt to apportion fees between claims "on a contract" and related tort claims when the fees were incurred to litigate factual issues common to both claims.  *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 129–30 (1979); *Erickson v. R.E.M. Concepts, Inc.*, 126 Cal. App. 4th 1073, 1082–84 (2005).  Nor are attorney's fees apportioned between claims that are inextricably intertwined – in such situations, it is "impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units" and the Court is not required to attempt to untangle the claims that PSI itself joined together.  *Abdallah v. United Sav. Bank*, 43 Cal. App. 4th 1101, 1111 (1996) (citation/quotation omitted).

Applied here, the central factual issues in this case were common to PSI's breach of contract claims and the related tort claims.  Indeed, PSI's own allegations relied on the supposed torts as constituting the alleged breach.  For example, PSI alleged that Stanley breached his Employment Agreement by "[f]ailing and refusing to protect PSI's trade secrets and confidential proprietary software, Source Code and other information … thus illegally divulging, sharing and misappropriating PSI's proprietary and trade secret information."  (SAC, ¶89(c).)  PSI similarly alleged that the City breached the Software Agreement by "[f]ailing and refusing to protect PSI's confidential and proprietary software, trade secrets, Source Code and other information … thus illegally sharing and misappropriating PSI's trade secrets…."  (SAC, ¶101(g).)

Further, this Court has already recognized that PSI's contractual and tort claims were intertwined, noting that "PSI asserts the following causes of action against Stanley: (1) breach of the employment agreement with PSI *by misappropriating PSI's trade secrets and confidential*

NOTICE OF MOTION & MOTION FOR ATTORNEY'S FEES AND COSTS; M.P.A

56409511.V6

*information*; (2) breach of implied covenant of good faith and fair dealing *by misappropriating PSI's trade secrets and confidential information*; (3) misappropriation of PSI's trade secrets; (4) intentional interference with contractual relations *by intending to and using PSI's trade secrets and confidential information for the City*, *which enabled the City to breach its Agreement with PSI*; and (5) negligent and intentional interference with prospective economic relations *by using PSI's trade secret and confidential information for the City, causing economic loss from PSI's Agreement with the City*." (Scott Decl., Ex. A at 4:24-5:5 (emphasis supplied).) In its claims against the City, PSI similarly asserted: "(1) breach of the Agreement; (2) breach of the implied covenant of good faith and fair dealing; and (3) misappropriation of trade secrets." (*Id.* at 5:5-7.)

Indeed, PSI's Rule 30(b)(6) designee testified that PSI's contractual and tort claims – and resulting damages allegations – were intertwined, and indistinguishable:

> A. I am saying that it is inexplicably [sic] intertwined with the remainder of the case, that's what I'm saying.
>
> Q. What is inexplicably intertwined?
>
> A. All of these claims go together. That's what I'm saying. (Scott Decl., Ex. K at 113:17-22.)
>
> ***
>
> Q. Of that [$]1,282,400, what amount is PSI claiming is allocated to the misappropriation of [its] trade secrets, are you able to tell me that?
>
> A. I'm not.
>
> Q. You have no idea?
>
> A. It would be arbitrary.
>
> ….
> Q. Please tell me why you think it might be arbitrary?
>
> A. All of these items are closely tied together. They all arose together. They all pertain to one software package. Once you've broken the egg, you just -- it's altogether.
>
> …. I said that for the purposes of this matter, they are very closely and intertwined with all of the damages. (Scott Decl., Ex. K at 123:11-16; 123:22-124:2; 124:7-9.)

Finally, the Court explicitly found that PSI's claims of Stanley's purported contractual breaches and torts were all predicated on its allegations that "Stanley's misconduct occurred

NOTICE OF MOTION & MOTION FOR ATTORNEY'S FEES AND COSTS; M.P.A

56409511.V6

while he was working as a City employee." (Scott Decl., Ex. A at 16:8-9 and 16:13-14.)  As such, its claims against Stanley and the City were factually and legally intertwined.

### 3.    Plaintiffs Cannot Evade Contractual Attorney's Fees by Claiming, in Hindsight, That Its Own Alleged Contracts Are Unenforceable

Defendants' right to contractual fees and costs is not defeated because the Court ultimately found that the City was correct that the Software Contract expired before the 2014 "breach" alleged by PSI.  Under California law, a plaintiff is estopped from suing on a disputed contract and claiming entitlement to fees if it wins – but that if it loses, no fees can be awarded. Such one-sided claims are impermissible under the California statute mandating the mutuality of fees provisions (Cal. Civ. Code § 1717(a)).  Put simply, a plaintiff asserting the enforceability of a contractual attorney's fees provision is bound by its own assertion, win or lose.

Here, PSI specifically alleged its entitlement to fees under the Software Contract:  "The Agreement, at Paragraph 43, provides that the prevailing party to any action or proceeding to determine or enforce its rights under the contract shall be entitled to recovery of all expenses reasonably incurred, including court costs, reasonable attorney fees and costs of suit as determined by the court."  (SAC, ¶83.)  PSI thus prayed for its attorney's fees and costs "pursuant to contractual and statutory authority."  (SAC, at 74:21.)

California Civil Code § 1717 was enacted to establish mutuality of remedy where a contract makes attorney's fees available to only one party, and to prevent oppressive use of one-sided attorney's fees provisions. *Reynolds Metals Co., supra*, 25 Cal. 3d at 128.  As stated by the California Supreme Court, "[t]o ensure mutuality of remedy … it has been consistently held that when a party litigant prevails in an action on a contract by establishing that the contract is invalid, inapplicable, unenforceable, or nonexistent, section 1717 permits that party's recovery of attorney fees whenever the opposing parties would have been entitled to attorney fees under the contract had they prevailed." *Santisas v. Goodin*, 17 Cal. 4th 599, 611 (1998) (citations omitted). *See also Hsu v. Abbara*, 9 Cal. 4th 863, 870–71 (1995) (same).

For example, in *International Billing Services, Inc. v. Emigh*, 84 Cal. App. 4th 1175 (2000) (which, like this case, involved allegations of trade secret misappropriation and breach of

NOTICE OF MOTION & MOTION FOR ATTORNEY'S FEES AND COSTS; M.P.A

56409511.V6

confidentiality agreements), plaintiff sought attorney's fees in its complaint. *Id*. at 1186. Defendants prevailed and the court awarded their attorney's fees, despite plaintiff's argument that the contract did not include a fee provision: "If a party to a contract can claim a right to recover attorney's fees pursuant to a provision in a contract and then deny the effect and application of that provision if his opponent prevails, section 1717's purposes would be thwarted and attorney's fees claims could be used as instruments of oppression. Specifically, uncertainty about a party's rights and obligations with respect to ultimate recovery of attorney's fees would create pressure to settle unmeritorious claims." *Id*. at 1188. "A pleader should not be permitted to threaten a litigant with the prospect of an adverse attorney fees award and avoid the same fate if unsuccessful." *Id.* at 1191.

In *Care Construction, Inc. v. Century Convalescent Centers, Inc.*, 54 Cal. App. 3d 701 (1976), *disapproved in part on other grounds by Canal-Randolph Anaheim, Inc. v. Wilkoski*, 78 Cal. App. 3d 477 (1978), the court upheld an award of attorney's fees under the sued-upon lease even though defendants prevailed on their argument that no valid or enforceable lease existed. The court explained that "one who defends a lawsuit 'on a contract' on the basis that there was no valid agreement is entitled to attorney's fees…." *Id*. at 705. Accordingly, "a prevailing defendant sued for breach of contract containing an attorney's fees provision and having had to defend the contract cause of action is entitled to recover its own attorney's fees and costs therefor, even though the trial court finds no contract existed." *Jones v. Drain*, 149 Cal. App. 3d 484, 490 (1983). *Accord, Cano v. Glover*, 143 Cal. App. 4th 326, 331-332 (2006) (defendant who successfully demurred to breach of contract claim did not have to prove the existence of the contract in order to recover fees; plaintiff was estopped by his own pleadings).

> In short, [w]here a plaintiff claims breach of a contract containing an attorney fee provision and the defendant asserts there is no contract and wins, it will have established that there is no contract and, hence, no attorney fee provision. Nevertheless, since the plaintiff would have been entitled to attorney fees if the plaintiff had succeeded in proving there was a contract, *courts have recognized a right of the defendant to recover attorney fees even if [the] defendant proves there was no contract*, in order to further the purposes of [California] Civil Code section 1717.

NOTICE OF MOTION & MOTION FOR ATTORNEY'S FEES AND COSTS; M.P.A

56409511.V6

*Linear Tech. Corp. v. Tokyo Electron, Ltd.*, 200 Cal. App. 4th 1527, 1538 (2011) (emphasis supplied; quotation/citation omitted).

Federal courts applying California law agree. For example, fees were awarded in *In re Murray*, No. 11-10535, 2013 WL 4100804, at *1 (Bankr. N.D. Cal. Aug. 9, 2013), where the court noted that "there is no requirement that a winning defendant under a contract dispute prove that the losing plaintiff clearly and actually would have been entitled to fees if it had prevailed. It is enough if the defendant shows that 'the contract [plaintiff] sought to enforce contained such a clause. … A prevailing defendant should not be required to undergo a minitrial to establish the merit of the losing plaintiff's hypothetical fee claim under the contract on which the plaintiff sued.'" *Id.* at *1 (quoting *Linear Tech.*, *supra*, 200 Cal. App. 4th at 1538).

Finally, PSI's anticipated arguments regarding the expiration of the Software Contract have no relevance to the separate attorney's fee provision in Stanley's Employment Agreement, which remains binding on PSI, in any case.

**C.    Fees Are Also Warranted for Defeating PSI's Trade Secret Claims (Fifth, Sixth, Seventh, and Eighth Causes of Action)**

PSI also brought four causes of action predicated on the alleged misappropriation of trade secrets. The Fifth and Sixth Causes of Action alleged claims under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 *et seq*. The Seventh and Eighth Causes of Action alleged claims under the federal Defend Trade Secrets Act of 2016 ("DTSA"), 18 U.S.C. § 1836 *et seq*. Initially, Defendants are entitled to all fees incurred in defending against PSI's trade secret claims because, as discussed above, they indisputably are intertwined with and clearly relate to PSI's alleged contract claims. For that reason alone, fees incurred in defending against those claims are recoverable.

However, both statutes independently provide for attorney's fees and costs where, as here, a plaintiff brings or maintains a trade secret misappropriation claim in bad faith.

CUTSA provides:

> If a claim of misappropriation is made in bad faith, … the court may award reasonable attorney's fees and costs to the prevailing party. Recoverable costs hereunder shall include a reasonable sum to cover the services of expert

12

witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the prevailing party. [Cal. Civ. Code § 3426.4.]

The DTSA similarly provides:

(3) Remedies.--In a civil action brought under this subsection with respect to the misappropriation of a trade secret, a court may—
….
(D) if a claim of the misappropriation is made in bad faith, which may be established by circumstantial evidence, … award reasonable attorney's fees to the prevailing party. [18 U.S.C. § 1836(b)(3)(D).]

Determining when a claim is in "bad faith" under DTSA appears to be an issue of first impression, given its very recent enactment. Thus, cases examining the CUTSA "bad faith" standard are instructive.[2] Under CUTSA, "bad faith 'requires objective speciousness of the plaintiff's claim, as opposed to frivolousness, and its subjective bad faith in bringing or maintaining the claim.' … A 'specious' action 'may superficially appear to have merit,' … so attorneys' fees may be proper even if the claim is not frivolous." *Direct Techs., LLC v. Elec. Arts, Inc.*, 836 F.3d 1059, 1071 (9th Cir. 2016) (quoting *Gemini Aluminum Corp. v. Cal. Custom Shapes, Inc.*, 95 Cal. App. 4th 1249, 1262 (2002)).

As to the objective speciousness prong, a defendant seeking fees "is 'not required to conclusively prove a negative (i.e., that they did not steal [the plaintiff's] trade secrets). Instead, under the 'objectively specious' standard, it [i]s enough for defendants to point to the absence of evidence of misappropriation in the record.'" *Cypress Semiconductor Corp. v. Maxim Integrated Prod., Inc.*, 236 Cal. App. 4th 243, 260 (2015) (quoting *SASCO v. Rosendin Elec., Inc.*, 207 Cal. App. 4th 837, 848 (2012).) Objective speciousness exists "where the action superficially appears to have merit but there is a complete lack of evidence to support the claim." *Id.* at 261 (quotation and citation omitted). Here, objective speciousness is easily satisfied – PSI's striking lack of evidence was pointed out in this Court's summary judgment orders. (Scott Decl., Exs. B & C.)

---

[2] Legislative history supports this, as the relevant CUTSA and DTSA provisions are both based on the Uniform Trade Secrets Act ("UTSA"). "Subparagraph (D) [of DTSA] allows that attorneys' fees may be awarded to the prevailing party if a claim of misappropriation is made in bad faith…. This provision is modeled on § 4 of the UTSA." (S. Rep. No. 114-220 (Mar. 7, 2016) (previously filed at Dkt. No. 93, at p. 25 of 92).)

NOTICE OF MOTION & MOTION FOR ATTORNEY'S FEES AND COSTS; M.P.A
56409511.V6

As to the subjective bad faith prong, PSI's "subjective belief in the merits of its case" is no excuse. *Cypress Semiconductor*, 236 Cal. App. 4th at 267. The question is "not what the plaintiff believed about its objectively specious claim, but for what *purpose* it pursued such a claim." *Id.* (citations omitted). Thus, there is subjective bad faith where plaintiff commenced or maintained the action for any improper purpose, such as harassment, delay, or to thwart competition. *Id.* Subjective bad faith "will rarely be susceptible of direct proof; usually the trial court will be required to infer it from circumstantial evidence." *Gemini Aluminum Corp.*, *supra*, 95 Cal. App. 4th at 1263 (citation/quotation omitted).

Here, PSI's own pleadings reflect that it improperly sought to stifle competition by threatening trade secrets claims if the City took the entirely lawful action of hiring another vendor and transferring its taxpayer data to PSI's competitor, HdL. It alleged, "PSI is informed and believes that at some point in the near future, the new software vendor will be provided access to Oakland's business tax department's computer system and database *for purposes of taking over the role that PSI formerly held*. Such access … would present a grave risk of PSI's trade secrets and proprietary information being access by HdL, one of PSI's competitors." (SAC, ¶108 (emphasis supplied).) PSI doubled down on its anticompetitive efforts when it alleged – without any supporting evidence – that whatever data the City provided to HdL, it should be presumed that any such data must contain PSI's trade secrets. The Court soundly rejected PSI's claims, and noted that "without the actual evidence, PSI cannot meet its burden of proof to show that the City disclosed PSI's trade secrets to HdL in the 'database copy.' For example, the City argues that raw data alone does not constitute a trade secret. If the City sent to HdL raw data from a database with nothing else, there would be no disclosure of a trade secret." (Scott Decl., Ex. C at 10:19-24.) Put simply: while PSI was doubtless unhappy that the City hired its competitor HdL, PSI acted in subjective bad faith when it attempted to use a lawsuit to prevent its competitor from gaining the City's business.

PSI further demonstrated an improper purpose of harassment, and an attempt to extort a settlement, in light of the way it alleged and litigated its purported "trade secret" claims. As set forth in more detail below, PSI maintained trade secret claims that it knew it had no evidence to

14

support.  PSI further alleged an incredibly broad array of trade secrets, and thereby forced Defendants to undertaken an extensive investigation into the dozens of "trade secrets" PSI claimed had been misappropriated.  In turned out, however, that PSI had no genuine intention of supporting its inflated trade secret claims, and alleged them solely to increase the threat of its lawsuit and drive up defense costs – as exhibited by PSI's abandonment of all but *three* alleged trade secrets at the summary judgment stage, which it still failed to support with evidence.

The Court may find subjective bad faith/improper purpose based on the fact "that the litigation was conducted in a manner calculated to magnify [Defendants'] legal expenses by … employing tactics that were discourteous and inconsiderate at best, and vexatious and oppressive at worst." *Cypress Semiconductor, supra*, 236 Cal. App. 4th at 270.  In *Cypress*, the court found evidence of oppressive intent where plaintiff "waited to amend its complaint until the last day on which it could have filed opposition to the demurrer interposed by [defendant] nearly four months earlier. … [which] required [defendant] to demur a second time, and delayed any determination on the legal sufficiency of the pleading for another four months." *Id.*  Here, as set forth above, PSI waited until Defendants actually *filed a motion for summary judgment* in state court before it sought to amend its complaint, which required Defendants to file new dispositive motions and delayed the determination of the legal insufficiency of PSI's claims for more than a year.  (Meyers Decl., ¶7.)  PSI also engaged in bad-faith shenanigans in opposition to Defendants' summary judgment motion, as amply documented by this Court.  (*See* Scott Decl., Ex. B at 7:13-12:6 (noting PSI's violations of filing deadlines, failures to serve redacted documents, and submission of purported LeVan "errata sheets")).)

Moreover, PSI improperly asserted DTSA claims against Stanley despite the fact that the parties "agree[d] that Stanley's employment with the City ended a year before the DTSA's effective date, in May 2015" (Scott Decl., Ex. C at 5:16-17).  The Court thus granted summary judgment on the grounds that the DTSA went into effect only on May 11, 2016, and Stanley had engaged in no relevant conduct after his retirement in May 2015.  The Court noted that PSI failed to "address this point in its opposition brief," and did not even attempt to argue that any evidence existed to support its claim that Stanley had committed any violation of the DTSA within the

15

effective period. (*See id.* at 5:18-21.) PSI's DTSA claim against this individual defendant was plainly brought in bad faith. *See Gabriel Techs. Corp. v. Qualcomm Inc.*, 560 F. App'x 966, 974 (Fed. Cir. 2014) ("[P]laintiffs acted with subjective bad faith when they obstinately refused to abandon their trade secret claims even in the face of unequivocal evidence that those claims were barred by CUTSA's three-year statute of limitations.").

As to both Defendants, PSI alleged broad, sweeping claims of misappropriation of trade secrets in virtually every aspect of its business – but PSI had no real intention of pursuing those claims, and later abandoned the vast majority of those "trade secrets." During the state court portion of this action, PSI was required to comply with California Code of Civil Procedure § 2019.210, which provides in pertinent part, "In any action alleging the misappropriation of a trade secret . . . the party alleging the misappropriation shall identify the trade secret with reasonable particularity." Pursuant to statute, PSI served a "Response to Request for Identification of Trade Secrets": i.e., a list in which PSI identified over 30 separate trade secrets that it alleged had been misappropriated by Defendants. (Scott Decl., Ex. L.) In its May 18, 2015 disclosure, PSI claimed that it had many extremely broad trade secrets at issue in this case. PSI's allegedly-misappropriated trade secrets included, by way of example:

- "Progressive Solutions code base: including dlls, code files, and build settings" (*id.* at 4:14-15);

- "In house documentation on coding such as comments, schema tables, field dictionaries and the like" (*id.* at 4:15-17);

- "[T]he names, buying habits, services or practices of any of PSI's customers, its marketing methods and related data, the names of any of its vendors or suppliers, costs of materials, the prices it obtains or has obtained or at which it sells or has sold its products or services, manufacturing and sales costs, lists or other written records used in Employer's business, compensation paid to employees and other terms of employment, or any other confidential of, about, or concerning the business of PSI, its manner of operation, or other confidential data of any kind, nature or description." (*id.* at 4:17-25);

- "PSI Source Code" (*id.* at 7:8); and

- "PSI's Proprietary 'Lock Box'™ Technology and Specifications … 'License Track'™ Technology and Specifications, including renewals, applications, and business lookups modules … 'Collections Track'™ Technology and Specifications … 'Payment Central'™ Technology and Specifications … 'Quick Serve'™ Technology and Specifications … 'Revenue Track'™ Technology and Specifications … [and] QuickServe Kiosks™" (*id.* at 7:9-16).

16

Defendants were thus forced to conduct fact discovery on the dozens of trade secrets that PSI claimed were misappropriated.  Yet, in August 2017, Defendants took the deposition of PSI's Rule 30(b)(6) designated witness on trade secrets – at which time PSI finally, inexplicably abandoned the vast majority of the trade secrets it had claimed were at issue in its May 2015 disclosure.  Among other things, PSI reversed course and stated that it was *not* claiming that Defendants had misappropriated any source code, directly contradicting its own prior disclosure of "misappropriated" PSI source code.  (Scott Decl., Ex. M.)

As this Court found, PSI's final (much narrower) trade secret misappropriation claims against the Defendants were still completely unsupported by the evidence.  As to PSI's allegation that its trade secret "joins" were wrongly disclosed in the City's Procedures, "PSI's own witnesses testified that the Procedures do not disclose any information about the 'joins' between tables." (Scott Decl., Ex. C at 7:14-15.)  PSI also argued "that SQL 'table and column names are trade secrets and that the City disclosed that information to HdL." (*Id.* at 11:14-16.)  Again, however, "PSI's own witness, Levan, … admitted that the table names and columns are not trade secrets." (*Id.* at 11:17-19.)  Even if PSI once thought these were protectable trade secrets, it should have dropped the claims after Mr. LeVan was deposed in September 2017.  It is indisputable "that '[a] trade secrets claim could be brought in good faith but warrant attorney fees' when the claim is pursued beyond the point at which it becomes clear that the claim lacks merit." *Gabriel Techs. Corp, supra*, 560 F. App'x at 974 (quoting *FLIR Sys., Inc. v. Parrish*, 174 Cal. App. 4th 1270, 1283 (2009)).

PSI's bad faith in asserting the trade secret claims is further reflected by the fact that PSI fabricated "errata sheets" to substantively change Mr. LeVan's testimony.  As the Court found, "PSI attempted to alter the substance of Mr. Levan's testimony through purported 'errata sheets,' but the Court sustained Defendants' evidentiary objections to them." (Scott Decl., Ex. C at 7:17-19.)  That was because "LeVan's purported changes are not merely corrective, but seek to alter the substance of his deposition testimony.  Even if he had corrected his deposition transcript in accordance with Rule 30, the corrections here are improper." (Scott Decl., Ex. B at 12:3-5.)

NOTICE OF MOTION & MOTION FOR ATTORNEY'S FEES AND COSTS; M.P.A
56409511.V6

PSI's submission of the purported LeVan "errata sheets" was a transparent, bad-faith attempt to manufacture a triable issue of fact to support its meritless trade secret claims.

Additionally, PSI's allegation that its screen shots were "trade secrets" was frivolous. As Defendants pointed out, "PSI regularly showed screen shots to attendees at industry events" and attached them in response to Requests for Proposals. (Scott Decl., Ex. C at 13:2-5.) Although PSI continued to argue that these screen shots were trade secrets, it made no attempt to demonstrate that any evidence existed to support that claim. (*Id.* at 13:5-10.)

PSI's CUTSA claims mirrored its DTSA claims, and all were asserted in bad faith, as shown above. The bad faith nature of its CUTSA claims is additionally demonstrated by the fact that PSI asserted them in violation of the California Government Claims Act ("CGCA"), as this Court has already determined. (Scott Decl., Ex. A at 14:23-25 ("PSI's CGCA claim did not include the essential elements regarding the alleged misappropriation of trade secrets in its pre-litigation communications with the City, and PSI has not alleged or proven any excuse from compliance with the CGCA").) PSI's business model is to sell its software and support services to public entities, and the majority of its business is with local public entities in California. As a knowledgeable public entity vendor, PSI knew or should have known that litigating trade secret claims despite having failed to give notice of them in a CGCA claim was improper, pursuant to black-letter California law. PSI was well aware of the CGCA claim requirement, as shown by its submission of a claim that PSI explained was intended to be its "formal notification (*as required per Government Code Section 910 et seq.*) of our intent to pursue our claim." (Scott Decl., Ex. A at 2:13-15.) Despite the fact that its CGCA claim provided no notice of PSI's theory that Defendants had misappropriated trade secrets (and no allegations at all about any misconduct by Defendant Stanley), PSI nonetheless brought and aggressively litigated those claims in bad faith.

### D.    Defendants Are Independently Entitled to Fees and Costs Under the California Government Claims Act ("CGCA")

Finally, Defendants are independently entitled to recover their fees and costs as a result of PSI's maintenance of an unmeritorious action against a public entity and public employee. California Code of Civil Procedure § 1038 provides, in relevant part:

18

(a) In any civil proceeding under the Government Claims Act …, the court, upon motion of the defendant …, shall, … determine whether or not the plaintiff … brought the proceeding with reasonable cause and in the good faith belief that there was a justifiable controversy under the facts and law which warranted the filing of the complaint…. If the court should determine that the proceeding was not brought in good faith and with reasonable cause, an additional issue shall be decided as to the defense costs reasonably and necessarily incurred by the party or parties opposing the proceeding, and the court shall render judgment in favor of that party in the amount of all reasonable and necessary defense costs, in addition to those costs normally awarded to the prevailing party….

(b) "Defense costs," as used in this section, shall include reasonable attorney's fees, expert witness fees, the expense of services of experts, advisers, and consultants in defense of the proceeding, and where reasonably and necessarily incurred in defending the proceeding.

Cal. Code Civ. Proc. § 1038.

The statute "provides public entities … and other specified defendants [i.e., public employees] with a way to recover the costs of defending against unmeritorious and frivolous litigation." *Kobzoff v. Los Angeles Cty. Harbor/UCLA Med. Ctr.*, 19 Cal. 4th 851, 857 (1998). It is only applicable where claims asserted against public entity defendants are summarily resolved, including by the grant of summary judgment (as here). Cal. Civ. Proc. Code § 1038(d).

To deny a motion for fees under section 1038, "the court must find the plaintiff brought or maintained the action: (1) in the good faith belief in the action's justifiability, *and* (2) with objective reasonable cause." *Laabs v. City of Victorville*, 163 Cal. App. 4th 1242, 1271 (2008) (emphasis supplied); *see also Kobzoff*, 19 Cal. 4th at 862.

"Reasonable cause is 'defined under an objective standard as whether any reasonable attorney would have thought the claim tenable.'" *Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1128 (9th Cir. 2013) (quoting *Kobzoff*, 19 Cal. 4th at 857. "If a legislative purpose to protect public entities from meritless claims is to be served, a plaintiff must bear a burden of investigation sufficient to establish at least a basis for reasonable belief that all elements exist. Abstract hope is not reasonable belief: Under section 1038 a plaintiff who lacks even the basis for a reasonable belief in the existence of all essential elements of his or her claim cannot simply name every conceivable defendant and rely on what future discovery may turn up." *Kobzoff*, 19 Cal. 4th at 858 (quoting *Knight v. City of Capitola*, 4 Cal. App. 4th 918, 933–34 (1992)).

19

"'Good faith, or its absence, involves a factual inquiry into the plaintiff's subjective state of mind [citations].' … As a party's 'subjective state of mind will rarely be susceptible of direct proof[,] usually the trial court will be required to infer it from circumstantial evidence.'" *Garedakis v. Brentwood Union Sch. Dist.*, No. 14-CV-4799-PJH, 2017 WL 725564, at *5 (N.D. Cal. Feb. 24, 2017) (quoting *Knight*, 4 Cal. App. 4th at 932). Finally, "'Section 1038 applies not only to initiation of an action *but also to steps to pursue it after it has been filed*.'" *Garedakis*, 2017 WL 725564, at *5 (emphasis supplied; quoting *Knight*, 4 Cal. App. 4th at 931).

As set forth above, the evidence reflects that PSI had neither a "good faith belief" in the justifiability of its claims, nor "objective reasonable cause" to maintain them through the summary judgment stage. For instance, PSI simply abandoned three of the claims placed at issue in Defendants' dispositive motion before this Court:

> Defendants move for summary judgment on PSI's second and fourth causes of action against the City and Stanley for breach of implied covenant of good faith and fair dealing. Plaintiff agrees that it cannot proffer facts to support these claims and "relinquishes" these two claims. (Dkt. 54 (Opp.) at 5-6.) Defendants further argue that PSI's claim for punitive damages against the City is barred as a matter of law. Plaintiff concedes this point as well. (*Id.* at 6.) Accordingly, the Court GRANTS Defendants' motion as to these two claims and PSI's request for punitive damages from the City. (Scott Decl., Ex. A at 6:17-23.)

There was obviously no defensible basis for these claims, and PSI very well knew it. It should not have been necessary for Defendants to file a dispositive motion before PSI "relinquished" them in its Opposition.

Similarly, PSI knew that its claims for trade secret misappropriation were not supported by the evidence; it had no "good faith belief" in the justifiability of those claims or "objective reasonable cause" to maintain them, for the reasons set forth in detail above (including, among other things, PSI's attempt to oppose summary judgment via "errata sheets" that sought to reverse the admissions of its own witness, Mr. LeVan).

PSI also knew that its failure to comply with the CGCA claim requirement barred all of its state-law claims against Stanley, and all state-law claims against the City other than for contractual nonpayment. Where, as here, a plaintiff maintains such state claims despite its clear failure to comply with the CGCA claim presentation requirement, it cannot establish that it had a

"good faith belief" and "objective reasonable cause" under section 1038. In *Garedakis*, *supra*, 2017 WL 725564, the court held that defendants were "entitled to fees under the § 1038 standard, based on plaintiffs' failure to comply with the claims presentation requirement of the [CGCA] before filing the state-law claims." *Id.* at *7. *Garedakis* also noted that while plaintiffs argued that their failure to comply with the CGCA claim requirement did not justify fees because they claimed exemption from that requirement, "plaintiffs did not raise the issue of the 'exemption' from the claims-presentation requirement at any time prior to their opposition to defendants' summary judgment motion." *Id.* at *8. "Thus, there is no basis for finding that the claims were reasonable at the time they were filed, or that they were filed in good faith." *Id.*

*Garedakis* is on point: this Court likewise found that PSI asserted an "exemption" from the CGCA claim requirement for the first time in opposition to Defendants' summary judgment motion: "Unfortunately for PSI, it does not alleg[e] in its SAC that it was not required to file a CGCA claim. In fact, PSI alleges in the SAC that it did comply with the SAC. … [E]ven if the Court were to construe PSI's opposition to the motion for partial summary judgment as a request to amend its complaint, the Court would deny it as untimely and unduly prejudicial at this late procedural stage in light of the fact that non-expert discovery has already closed." (Scott Decl., Ex. A at 10:3-16.) PSI's maintenance of the state-law claims against Defendants – despite its failure to comply with the CGCA – mandates an award of fees and costs under Section 1038.

Finally, PSI knew that it had no proper basis to assert the claim for contractual breach against the City. As this Court has found, PSI was notified before it filed this litigation that the Software Contract had expired, and no payment was required. After receiving PSI's CGCA claim, "[t]he City responded to the contention that it breached the Agreement and argued that the Agreement was only for a three-year term. Therefore, according to the City, it was not in default." (Scott Decl., Ex. B at 4:23-25.) PSI also knew that Oakland is a Charter City, and thus could not contract in any manner not authorized by its Charter. (*See* SAC, ¶3 ("Defendant, City of Oakland … is … a charter city organized and existing under the laws of the State of California.").) The Court granted summary judgment on PSI's contractual claim against the City because PSI's "automatic renewal" argument was in conflict with the City's Charter and thus

21

failed as a matter of law. (Scott Decl., Ex. B at 17:27-18:4.) Accordingly, there was no "good faith belief" or "objective reasonable cause" for PSI's maintenance of *any* of its state law claims.

**E.    The Hours Spent by Defendants' Counsel Were Reasonably Expended**

As to the fee calculation, the lodestar method applies to both the state and federal claims in this action. "[Both federal and California] [c]ourts use the 'lodestar' method to calculate reasonable attorneys' fees." *Stonebrae L.P. v. Toll Bros.*, 521 F. App'x 592, 594 (9th Cir. 2013) (citing *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (2000)). Hours expended on the successful defense of related claims are included in the lodestar calculation, whereas hours spent on unrelated and unsuccessful claims are not. *Id.* "Claims that arise from the same course of conduct are related." *Id.* Likewise, "claims are related if they 'involve a common core of facts or [are] based on related legal theories.'" *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 902 (9th Cir. 1995) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434–35 (1983)). As explained above, PSI's claims all relied upon a common core of facts and involved related legal theories, and therefore all are included in the lodestar calculation.

Additionally, both California and federal courts provide for the recovery of attorney's fees by in-house counsel (including City Attorneys), as well as outside legal counsel. *See, e.g., Newport Yacht Club v. City of Bellevue*, No. C09-0589RSL, 2010 WL 11527282, *1 (W.D. Wash. July 19, 2010) (City's in-house attorneys and outside counsel both entitled to fees at market rate in joint representation); *Acosta v. GT Drywall*, No. EDMC170006JGBKKX, 2018 WL 1041412, at *1-2 (C.D. Cal. Jan. 22, 2018) ("[C]ourts in this Circuit use the lodestar method to award attorney's fees to the government based on the prevailing market rates" and finding reasonable rate of $200 for government attorney with 2 years of experience); *United States v. State Farm Mut. Auto. Ins. Co.*, 245 F. Supp. 58, 59 (D. Oregon 1965) ("[N]o meritorious reason has been submitted for refusing to award the Government attorneys' fees."); *PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1094-96 (2000) (affirming award of in-house counsel's fees at market rate); *City of Santa Rosa v. Patel*, 191 Cal. App. 4th 65, 69-71 (2010) (holding City attorney's fees must be calculated under lodestar, prevailing market rate method).

NOTICE OF MOTION & MOTION FOR ATTORNEY'S FEES AND COSTS; M.P.A
56409511.V6

Under the lodestar method, the moving party must show (1) the appropriate hours spent in the litigation and (2) the reasonableness of the rates. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The district court must then multiply the number of hours reasonably expended on the litigation by the reasonably hourly rate. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622 (9th Cir. 1993). While this lodestar figure "is presumptively reasonable, … a district court may make upward or downward adjustments to the presumptively reasonable lodestar on the basis of those factors set out in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir. 1975), that have not been subsumed in the lodestar calculation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008) (quotation omitted).[3]

As to the reasonableness of the hours worked, California law "do[es] not require detailed time records, and trial courts have discretion to award fees based on declarations of counsel describing the work they have done and the court's own view of the number of hours reasonably spent." *Syers Properties III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 698 (2014). *See also Trustees of Cent. States, Se. & Sw. Areas Pension Fund v. Golden Nugget, Inc.*, 697 F. Supp. 1538, 1558–59 (C.D. Cal. 1988) (noting lenient California standard on time records, and holding "the Ninth Circuit requires only that affidavits submitted by the party requesting fees be sufficient to enable the court to consider all the factors necessary to determine a reasonable attorney's fee award.")

The Scott and Meyers Declarations (and attached exhibits) detail the incurred attorney's fees and support the number of hours expended and the hourly rates, as well as incurred costs (not included in Defendants' Bill of Costs). (Scott Decl., ¶¶8-25 & Exs. E-G; Meyers Decl., ¶¶2-11 & Exs. A-C.) Accordingly, Defendants request a total of $992,890.71, which consists of:

- <u>$533,280.00</u> for the attorney's fees incurred by Defendants' outside counsel; and

---

[3] The *Kerr* factors are: 1) time and labor required; 2) novelty and difficulty of the questions; 3) skill requisite to perform the legal services properly; 4) preclusion of other employment due to acceptance of the case; 5) customary fee; 6) contingent or fixed fee; 7) client or case-imposed time limitations; 8) amount involved and results obtained; 9) experience, reputation, and ability of attorneys; 10) undesirability of the case; 11) nature and length of the professional relationship with the client; and 12) awards in similar cases. *Kerr*, 526 F.2d at 70. Although the factors favor an increase here, Defendants have no desire to reap a windfall and seek only to be made whole. Defendants thus are ***not*** requesting an upward adjustment of the lodestar calculation.

23

- $170,473.11 for the legal costs incurred by Defendants' outside counsel; and

- $284,247.66 for the attorneys' fees incurred by the City Attorney's Office; and

- $4,889.94 for the legal costs incurred by the City Attorney's Office.

The number of hours is justified, given the amount of work that was necessary to ultimately obtain Defendants' victory.  PSI invoked the newly-enacted DTSA, which required significant work in a novel area, including examination of the legislative history.  Further, PSI's "shotgun" approach to its claims and its constantly-shifting legal and factual theories made the case much more difficult than it needed to be.  That difficulty was increased by the way in which PSI litigated the case, including repeatedly disregarding deadlines and violating other procedural requirements.  Moreover, this case could have been resolved by the first summary judgment motion filed in state court, but PSI extended the proceedings by amending its complaint to add new claims, triggering a new round of discovery and the need for new dispositive motions.

Moreover, Defendants' requested rates are reasonable.  For lodestar purposes, rates are calculated according to the prevailing market rates in the relevant community.  *Van Skike v. Dir., Office of Workers' Comp. Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009).  The relevant community here is the Northern District of California.  *Camacho, supra*, 523 F.3d at 979.  Declarations of attorneys "regarding prevailing fees in the community, and rate determinations in other cases ... are satisfactory evidence of the prevailing market rate." *Id.* at 980 (quotation and citation omitted).  Here, Defendants' requested rates are commensurate with prevailing rates in the marketplace, as established by declarations.  (Scott Decl., ¶¶8-16; Meyers Decl., ¶9-11.)

Other recent cases confirm the reasonableness of the rates.  In "the [San Francisco] Bay Area, 'reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.'" *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 591 (N.D. Cal. 2015) (action for breach of contract, and violation of UCL; quoting *In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015).  *See also Gutierrez v. Wells Fargo Bank, N.A.*, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (found reasonable rates for Bay Area attorneys of between $475-$975 for partners, $300-$490 for associates, and $150-$430 for litigation support

24

and paralegals); *Armstrong v. Brown*, 805 F. Supp. 2d 918, 920–21 (N.D. Cal. 2011) (found that a range of $560–$800 was a reasonable rate for partners, $285–$510 for associates, $200–$240 for paralegals, and $150–185 for litigation support staff); *Faigman v. AT & T Mobility LLC*, No. C-06-04622-MHP, 2011 WL 672648, at *5 (N.D. Cal. Feb. 16, 2011) (found that $650–$753 was a reasonable rate for partners, $448–$455 for associates, and up to $175 for paralegals); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *18, 21 (N.D. Cal. Apr. 1, 2011) (found that up to $725 was a reasonable rate for an attorney, and up to $200 for a paralegal/legal assistant); *Suzuki v. Hitachi Glob. Storage Techs., Inc.*, No. C 06-7289 MHP, 2010 WL 956896, at *4 (N.D. Cal. Mar. 12, 2010) (found that up to $650 was a reasonable rate for a partner attorney, $500 for an associate, and $150 for a paralegal).  Those cases need not be identical to PSI's, to serve as a guide to reasonable rates.  *Stonebrae L.P., supra*, 521 F. App'x at 595 ("The market for complex litigation is an appropriate reference even where a more specific sub-market may be identifiable.").

Finally, Defendants obtained an unqualified judgment in their favor on all of PSI's claims, and did so without the additional time and expense of trial.  "Where, as here, a party achieves an excellent result, the court should refuse to reduce the lodestar amount." *Id.* at 595.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that they be granted their attorney's fees and costs in the total amount of $992,890.71.

Dated:  May 9, 2018                                NOSSAMAN LLP


By: */s/ Ilse C. Scott*
David C. Lee
Ilse C. Scott
Attorneys for Defendants CITY OF OAKLAND
and MICHAEL STANLEY

NOTICE OF MOTION & MOTION FOR ATTORNEY'S FEES AND COSTS; M.P.A
56409511.V6

**PROOF OF SERVICE**
*Progressive Solutions, Inc. v. Michael Stanley, et al.*
**USDC, Northern District of California Court Case No.  3:16-cv-04805-SK**

The undersigned declares:

I am employed in the County of San Francisco, State of California.  I am over the age of 18 and am not a party to the within action; my business address is c/o Nossaman LLP, 50 California Street, 34th Floor, San Francisco, CA 94111.

On **May 9, 2018**, I served the foregoing **NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS; MEMORANDUM OF POINTS AND AUTHORITIES** parties to the within action as follows:

☐    (By U.S. Mail)  On the same date, at my said place of business, Copy enclosed in a sealed envelope, addressed as shown on the attached service list  was placed for collection and mailing following the usual business practice of my said employer.  I am readily familiar with my said employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service, and, pursuant to that practice, the correspondence would be deposited with the United States Postal Service, with postage thereon fully prepaid, on the same date at San Francisco, California.

☐    (By Overnight Service)  I served a true and correct copy by overnight delivery service for delivery on the next business day.  Each copy was enclosed in an envelope or package designated by the express service carrier; deposited in a facility regularly maintained by the express service carrier or delivered to a courier or driver authorized to receive documents on its behalf; with delivery fees paid or provided for; addressed as shown on the accompanying service list.

☑    (By the Court's ECF/Electronic Service)  By emailing true and correct copies to the persons at the electronic notification address(es) shown on the accompanying service list. The document(s) was/were served electronically and the transmission was reported as complete and without error.

Executed on **May 9, 2018**.

☐    (STATE)  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☑    (FEDERAL)  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*/s/ Nancy A. Machen*
Nancy A. Machen

1

NOTICE OF MOTION & MOTION FOR ATTORNEY'S FEES AND COSTS; M.P.A

56409511.V6

**SERVICE LIST**
*Progressive Solutions, Inc. v. Michael Stanley, et al.*
**USDC, Northern District of California Court Case No.  3:16-cv-04805-SK**

| **Attorneys for Plaintiff PROGRESSIVE SOLUTIONS, INC.** | **Attorneys for Defendants Michael Stanley and City of Oakland** |
|---|---|
| Sheryl A. Traum<br>LAW OFFICES OF SHERYL TRAUM<br>1901 Harrison Street, Suite 1100<br>Oakland, CA  94612<br>Email:  sheryl@traumlaw.com<br>Tel:  510-325-8321 | Barbara J. Parker<br>Otis McGee<br>David A. Pereda<br>Michelle M. Meyers<br>One Frank H. Ogawa Plaza, 6th Floor<br>Oakland, CA  94612<br>Tel:  510-238-2964 (Meyers)<br>Fax: 510-238-6500<br>Email:  mmeyers@oaklandcityattorney.org |

2

NOTICE OF MOTION & MOTION FOR ATTORNEY'S FEES AND COSTS; M.P.A

56409511.V6